### BATES & KLINKE, Inc., v. PETERS PATENT CORPORATION.
### No. 2891.

Circuit Court of Appeals, First Circuit.
Nov. 10, 1934.

Herbert B. Barlow, of Providence, R. I., for appellant.

Harold E. Cole, of Boston, Mass. (Vernon W. Marr, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a suit in equity for the infringement of United States Letters Patent No. 1,-570,776, applied for August 28, 1924, issued January 26, 1926, and now owned by the plaintiff-appellee. The defenses are invalidity and noninfringement.

The patent relates to finger rings and other articles of jewelry such as pins, and particularly to the means for setting an onyx or stone in a ring or pin whereby skilled labor is said to be dispensed with and the stone prevented from cracking or chipping. The invention, according to the specification, resides "in the combination and arrangement of parts and in the detailed construction hereafter described and claimed." It is there further stated: "Referring to the figures by characters of reference 1 designates the band portion of the ring provided with a plate or base 2 on which the mounted onyx, enamel, or other material is to be placed"; and, describing the structure in which the onyx or stone is held, it states that "a box 3 is employed, this having downwardly extending flanges 4 along three sides which are adapted to be soldered to three of the side edges of the plate"; that "the top of the box is cut out as at 5, before it is soldered on, to provide any suitable designs such as an emblem, monogram or the like"; that another or fourth "flange 6 is extended laterally from the open side of the box in alinement with the cut out face thereof so that when the box is joined to the plate 1 [the base] the flange will be extended as shown in figure 2"; that the onyx or stone shaped to fit the box "is adapted to be inserted edgewise under the flange 6 so as to completely fill the box, as shown at 7, after which the flange 6 is bent downwardly against the insert so as to come against and be soldered to the plate 2 [the base], if so desired." Other forms of construction such as are illustrated in figures 10, 11, 12, and 13, are mentioned, which, in the main, embody the same construction as that above stated and shown in figures 1, 2, and 3, in all of which the element denominated the box is made to rest upon a plate or base and upon which the mounted stone or onyx is to be placed and supported.

But the construction disclosed in figures 7, 8, and 9, and described in the part of the specification relating to them, has no base on the band of the ring to which the box can be attached and upon which the onyx or stone can rest, but the portion of the band where otherwise the base would be is entirely cut away and the box, with four closed sides, on being placed between the two ends of the band, has two of its opposing sides attached to the two ends of the band, and the onyx or stone rests, not upon a base, but upon teeth located on the bottom edges of the box which are bent inwardly after the onyx or stone has been inserted in the box from the inside of the ring.

There are only two claims, which read as follows:

"1. An article of jewelry including a base, a holding device integral therewith having an open face, there being also a second open face, and a member insertable through said second open face into the holding device

for exposure through the first mentioned open face, and means for retaining the inserted member against removal through said second open face.

"2. An article of jewelry including a base, a holding device integral therewith having an open face and a second face, a separate member, said second face having means for the insertion of said member for exposure through the first named face, said first named face having means for preventing removal of said member there through, and means movable to position across said second face for retaining the member against withdrawal."

Neither of these claims were in the application when it was filed in the Patent Office. All the original claims were rejected. None of them included the element of a base. When the present claims having a base as an element were presented, the specification was amended by inserting the words "or base" after the word "plate," showing that where the words "plate or base" appear in the specification, they mean the portion on the band of the ring on which the onyx or stone is to be placed and to the side edges of which three of the downwardly extending flanges or sides of the box are to be hard soldered before the onyx or stone is inserted in the box and the fourth flange is bent down and soft soldered to retain the stone.

It is evident that the insertion of the word "base" in the specification and claims was the introduction of a new element apparently essential to the granting of the patent; and that, inasmuch as figures 7, 8, and 9 present a structure having no base on the band of the ring upon which the stone may rest and to which the box or holding device may be made integral 'as called for in both claims, the structure illustrated in figures 7, 8, and 9 is not within the claims.

The meaning of the term "base," as used in the claims, can only be ascertained by referring to the drawings and specification, and as there shown and stated, it means the portion of the band upon which the onyx or stone is to be placed and to the "side edges" of which the downwardly extending flanges or sides of the box are to be soldered.

It thus appears that in a ring constructed according to the claims, the band of which has a base on which the onyx or stone is to be placed and to rest, the holding device, which has an open face at the top and a second open face, must have a second open face located at the side and not at the bottom or base, for, if the base is cut away to make a second open face, the onyx or stone would have no "base" on which "to be placed" and supported in the ring.

It appeared in evidence that as early as 1905, one Rollings made and sold two gold rings, the construction of which is as follows: Its holding device was oval shaped. At its top was cut an emblem in the shape of a heart (see Defendant's Exhibit No. 7) by which the stone was protected and through which it could be seen. This holding device was made separate from the band of the ring but was hard soldered to the base on the band. The stone was not inserted from the side of the holding device and did not rest on the base, but was inserted from the inside of the ring into the holding device and maintained there by a bezel soft soldered around the hole in the band through which the stone was inserted. These rings were produced in evidence and marked Defendant's Exhibits 7 and 8. As early as 1907, Rollings also made and sold a silver ring of like construction, which was produced in evidence and marked Defendant's Exhibit 9. Another silver ring was made in 1908 or 1909 and given away by a man who had seen the Rollings ring. He copied it, employing the same construction. This ring is Defendant's Exhibit 16.

It is therefore clear that in 1924, when the patentee conceived and applied for the patent in question, it was old to construct a ring having a holding device with an emblem at the top through which an inserted stone could be seen, the holding device being hard soldered to the base on the band and the stone being inserted from the inside of the ring up through an opening in the base, shaped to receive it, into the holding device and there held by a bezel soft soldered to the band. It is true that the holding device of the Rollings ring was oval, not square, and the opening through which the stone was inserted was in the base or band of the ring and not in the side of the holding device, as in the patentee's ring, but where the stone is to be inserted from the inside of the ring up through the band or base into the holding device it cannot be invention simply to make the holding device square rather than oval.

When the patent in suit was before the Circuit Court of Appeals for the Second Circuit the second time [H. W. Peters Co. v. MacDonald, 72 F.(2d) 670], that court, in stating the nature and scope of the invention at page 672 of 72 F.(2d), said:

"The real contribution of the inventor to the art was (1) the elimination of drill holes

and studs for fastening emblems to stones in rings, (2) incasing the stones in a frame, and (3) providing a means for firmly holding them there."

If this is so, then the patent disclosed nothing new, for the Rollings ring had previously taught all three of these things—(1) the elimination of drill holes and studs, (2) the incasing of stones in a frame, and (3) the providing of means for firmly holding them there. The Rollings ring was not before the court in the Second Circuit. If it had been, that court could not well have held the invention resided in the three things there stated.

The invention, therefore, of the patent in suit, if any, rests in the nature of its holding device partially open at the top and having depending sides with one or more of the sides open through which the stone is inserted and then held in place by some means such as are shown in figures 1, 2, 3, 4, 5, 6, 10, 11, 12, 13, and 14; and the claims in question must be so construed, and, when so construed, are not infringed. For, in the defendant's alleged infringing ring the square stone employed is inserted from within the ring up through the band into a square holding device which has no opening at the side and is held in place by a bezel as in the Rollings ring.

The decree of the District Court is vacated and the case is remanded to that court with direction to enter a decree dismissing the bill; the appellant to recover costs in both courts.